08C2413

IN THE CIRCUIT COURT OF COOK COUNTY IN THE STATE OF ILLINOIS
COUNTY LAW DEPARTMENT, _____ DIVISION

DAVID E, SMITH          plaintiff (s)          Judge Mcdonald , BarBara A.

PUBLISHERS CLEARING HOUSE   defendant (s)      Judge Your Honor:

TIME AND DATE SET BY JEDGE   ROOM   2401 AT 09:30 A.M. location as follows :

AT THE R.J.DALEY CENTER 50 West Washington Chicago,Illinois 60601  U.S.A.

PLAINTIFF (s)   PLEASE ALLOW ME TO NEGETE MY CASE.

FILED
MAY 13 2008
Judge Robert M. Dow, Jr.
United States District Court

DATE: MAY 13th, 2008

NOW PLAINTIFF (s) LOOK AT THE LAW OF THIS LAND,TAKEN FROM A.MERRIAM WEBSTER STUDENT DICTIONARY: WHAT IS LAW ,AND WHAT IS THE FUNDAMENTAL OF LAW : I DON't FEEL THAT CASE LAW '' Celotex V.Catrett 477 U.S.317,322,106 S. Ct.2505.2509 (1986) ' and the other LAWS IN THIS CHARGE ME WERE WRITTEN TO HINDER PLAINTIFF (s) FROM SUING AND RECEIVEING MONIES THAT's LAWFULLY MINE:THE FIRST PART OF THE JEWISH SCRIPTURES --- COMPAREHAGIOGAPHA AND PROPHETS :  TRIAL IN A COURT TO DETERMINE WHAT IS JUST AND RIGHT ACCORDING TO LAWS  AND SCIENCE THAT DEALS WITH LAWS   (study laws)and SEE COPIES FROM ATTORNET GENERAL OF ILLINOIS.I BELIEVE PUBLISHERS CLEARING HOUSE WERE IN LINE WITH RULES & LAWS WNEN THEY SELECTED DAVID E,SMITH WINNER OF SOME  AWARDS JULY 1997,Nov.21,1997 giveaway No.525 and GIVEAWAY No.375 TOTAL $13-5 MILLION DOLLARS. I HEREBY PRAY THAT THE COURT DROP ATTY Bryan Cave apprent plans delay payment or reduce money to Smith.

David E. Smith
5/10/08

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID E. SMITH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 08 C 2413 |
| PUBLISHERS CLEARING HOUSE LLC, | ) ) Judge Dow ) Mag. Judge Cox |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF PUBLISHERS CLEARING HOUSE LLC'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Publishers Clearing House LLC ("PCH") and submits this Memorandum in Support of its Motion for Summary Judgment.

## I.   INTRODUCTION

On or about February 13, 2008, Plaintiff commenced this action against PCH by filing a complaint in the Circuit Court of Cook County, in the State of Illinois, bearing Number 2008L001657 (the "Complaint"). SMF[1] ¶ 1. In his Complaint, Plaintiff alleges that he won the Publishers Clearing House Sweepstakes in July 1997, November 1997, September 1998, October 1998 and November 1998, but that PCH withheld his prize money. SMF ¶ 2. Plaintiff also vaguely alleges that PCH committed fraud in connection with letters PCH mailed to Plaintiff on these dates. SMF ¶ 3. Plaintiff makes a vague and confusing reference to fraud in his Complaint: "letters are falsified with words like should you be the winner) documents may fraud organization propaganda as provided your entry reach our office on time [sic]." SMF ¶ 3. It

---

[1] All citations herein are to PCH's Statement of Undisputed material Facts ("SMF") filed contemporaneously with this memorandum.

appears that Plaintiff seeks prize money from these sweepstakes and/or other money damages and/or attorney's fees.

PCH's Motion for Summary Judgment should be granted because Plaintiff did not win the Publishers Clearing House Sweepstakes. In addition, Plaintiff's claims arising out of alleged fraud in connection with PCH's mailings to Plaintiff are barred by both the doctrine of res judicata and the applicable statute of limitations. Moreover, Plaintiff has failed to plead facts that establish a claim of fraud under Illinois law.

## II.  LEGAL ARGUMENT

### A.  Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2505, 2509 (1986). The moving party must initially demonstrate the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Once the movant meets its initial burden, the nonmoving party "may not rest upon the mere allegations or denials of the [nonmovant's] pleading, but the [nonmovant's] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. Summary judgment is properly entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2509.

### B.  Applicable Law

2



# WINNERS DOCUMENT

## Prize Acceptance Affidavit

By affixing the label below, I do hereby testify and confirm that I am in all ways eligible to accept the $10,000,000.00 SuperPrize from Publishers Clearing House and I understand that I will be declared the

### WINNER OF
### $10,000,000.00

provided this document arrives in Port Washington, New York, on or before January 20, 1998 and my entry is chosen as the winner.

**Therefore,** I hereby state and affirm that to the best of my knowledge all information as presented below is true and accurate:

I am not related to any employee of Publishers Clearing House.

I know of no impediments to my eligibility to accept the $10,000,000.00 prize.

I understand that acceptance of prize constitutes permission to broadcast my winning moment live on television January 25th at the conclusion of the Super Bowl™ on NBC TV and I will receive an additional payment of $5,000.00 for this.

*I prefer my $10,000,000.00 prize be paid:*
☐ Certified Bank Checks
☒ Direct deposit via electronic transfer into my bank account.
(Please wait until January 25, 1998 to supply actual account number.)

Furthermore, I'd be happy to say my winning entry contained an order. Therefore please send me the following and grant me *On The House* privileges on any magazine I may order below. I also understand that an order now will upgrade my Customer Status.

DAVID E SMITH
6544 S STEWART AV
CHICAGO IL 60621

54 0062 1812

$10,000,000.00

Signed: David Smith



REPORT COPY – KEEP FOR YOUR RECORDS.

FILED-5
08 FEB -3 PM 4:35
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION



OFFICE OF THE ATTORNEY GENERAL
STATE OF ILLINOIS

Lisa Madigan
ATTORNEY GENERAL

October 16, 2007

David Smith
6546 S. Stewart Ave.
Chicago, IL 60621

Re: Publishers Clearing House
File No: 2007-CONSC-00198708

Dear Mr. Smith:

Thank you for your recent letter regarding the above-named business. We have recorded this information in our complaint files for future reference.

Should an inquiry into this matter or subsequent complaints indicate actionable violations of Illinois law, your file will be reviewed again for appropriate action. Thank you for your cooperation in bringing this information to our attention.

Sincerely,

ATTORNEY GENERAL
State of Illinois

*Monica Prandi-Svetogorsky*

Monica Prandi-Svetogorsky
Citizen's Advocate
Consumer Protection Division
(312) 814-3760

/jsm

 Public Safety and Emergency Preparedness Canada     Sécurité publique et Protection civile Canada

# Public Advisory: Special Report on COUNTERFEIT CHECKS AND MONEY ORDERS



## Summary

Recently, law enforcement and regulatory authorities in Canada and the United States have seen a substantial increase in the number of counterfeit checks and money orders that are being sent to consumers in connection with various fraud schemes. The Department of Public Safety and Emergency Preparedness Canada and the United States Department of Justice are jointly issuing a Public Advisory to warn the public about the growing use of counterfeit checks and money orders.

This Public Advisory informs consumers about the risks of accepting and depositing counterfeit checks and money orders in their bank accounts, and the steps that they should take when they receive communications offering to send them a check or money order.

## Facts

Recently, law enforcement and regulatory agencies in both Canada and the United States have seen a substantial increase in the number of counterfeit checks and money orders that are being sent to consumers in connection with various fraud schemes. In the United States, the number of Federal Deposit Insurance Corporation special alerts on counterfeit checks, bank drafts, and money orders has increased dramatically in recent years: 50 in 2003, 75 in 2004, 168 in 2005, and 259 in the first three quarters of 2006 – an increase of more than 500 percent in less than four years. The FBI, in fact, has cited "the pervasiveness of check fraud and counterfeit negotiable instrument schemes" as a leading factor in the growth in external bank fraud, which has "replaced bank insider abuse as the dominant [financial institution fraud] problem confronting financial institutions."

- Counterfeit checks and money orders are found in a growing array of fraud schemes. These include –
    - <u>Internet fraud schemes</u>, in which legitimate Internet users are selling

valuable items, such as cars, online, posting their resumes on employment-related websites, or visiting websites that appeal to people who are seeking roommates or have romantic interests.
- Advance-fee schemes, in which consumers are contacted by people who purport to need assistance in moving money out of an African country or to offer an inheritance or lottery winnings.
- Telemarketing fraud schemes, in which consumers are offered a check as supposed payment of a prize or lottery winnings.

### What Risks Do Consumers Face If They Deposit Counterfeit Checks or Money Orders in Their Bank Accounts?

Consumers who accept and deposit counterfeit checks or money orders in their accounts learn, too late, that their banks will hold them liable for the full face value of the checks or money orders. In addition, consumers who wire-transfer or mail the specific amount of money that the sender of the check or money order requested will lose that amount of money as well. In other words, if a consumer received and deposited into his bank account a $15,000 check that later proved to be counterfeit, and wired $5,000 of that amount to the check sender, he ultimately would lose $20,000: the full $15,000 amount on the check, and the $5,000 wire transfer. Banks in Canada and the United States have no obligation to return any of that money to the consumer.

In a number of cases, banks that discovered a counterfeit check had been deposited in one of their accounts have contacted the police, believing that the depositor was attempting to engage in check fraud. In some instances, this contact has resulted in the police initially arresting the depositor, before subsequent investigation disclosed that the depositor did not have fraudulent intent at the time of the deposit.

### Can People Recognize Checks or Money Orders As Counterfeit?

Sometimes, when criminals have been careless about altering or making copies of a legitimate check or money order, people may see that the images on the face or reverse of the check or money order are light, indistinct, or uneven. People who know that particular checks or money orders have certain special security features may also be able to recognize checks or money orders as possibly fraudulent if they see that one or more of these security features is missing.

The fact remains, however, that many counterfeit checks and money orders are of higher quality, and are likely to deceive even trained bank personnel at first. Criminals can use desktop-publishing software to print out counterfeit checks, often of high quality. Moreover, there is no one type of check or money order that criminals seek to counterfeit. Law enforcement and financial institution regulators know that the full range of counterfeit financial instruments now in use includes bank drafts, cashier's checks, government agency checks, official bank checks, personal checks, personal money orders, teller's checks, and treasurer's checks, as well as personal money orders and

